UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 20-60032-CIV-CANNON/Hunt

**In re:**

**AAMIR KHAN and HUMA AAMIR**,

 Debtors.
_____/

**AAMIR KHAN and HUMA AAMIR,**

 Appellants,

**v.**

**ALI PANJWANI,**

 Appellee.
_____/

**ORDER AFFIRMING BANKRUPTCY COURT'S ORDERS GRANTING
RELIEF FROM STAY AND ABSTAINING ADVERSARY PROCEEDING**

 **THIS CAUSE** comes before the Court upon Appellants' consolidated appeal of two Orders of the Bankruptcy Court: (1) an Order Granting Stay Relief *Nunc Pro Tunc* to November 7, 2018 and (2) an Order Abating Adversary Proceeding and Denying Motion to Dismiss and Motion to Strike Without Prejudice (the "Bankruptcy Orders") [ECF No. 1 pp. 3–4; ECF No. 23 p. 6].  The Appellants in this matter are Aamir Khan and Huma Aamir.  The Court has reviewed the record and is otherwise fully advised.  Following careful review, the Bankruptcy Orders are **AFFIRMED**.

**FACTUAL BACKGROUND**

 This bankruptcy appeal arises out of the Appellants' individual bankruptcy proceedings and a related state court action.  Appellants Aamir Khan and Huma Aamir also are the debtors in

this case [ECF No. 23 p. 8]. Huma Aamir is a 50% owner of a Florida Corporation called Alliance International Distributors Inc. ("Alliance"), which sells perishable foods in wholesale quantities [ECF No. 23 p. 8]. Ali Panjwani ("Appellee"), who is also a creditor in the bankruptcy, was an investor business partner who invested $1,000,000 into Alliance in exchange for a 50% ownership stake [ECF No. 23 p. 8].

On November 7, 2018, Appellants Aamir Khan and Huma Aamir filed for bankruptcy under Chapter 13 but later converted the proceeding to a Chapter 7 liquidation on June 12, 2019 [ECF No. 23 pp. 8–9]. On November 16, 2018, Appellee filed a state court action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, alleging, among other things, that his investment in Alliance was based on false and fraudulent representations [ECF No. 23 p. 9; ECF No. 12-5 pp. 12–43 (*Ali Panjwani v. Faisal Khan et al.*, Broward County Circuit Court (Case No. CACE-18-026971))]. On February 25, 2019, Appellee also initiated an adversary proceeding in bankruptcy court to dispute that its state court claims could be discharged in bankruptcy [ECF No. 12-8 pp. 41–55 (*Ali Panjwani vs. Aamir Khan and Huma Aamir* (Case No. 19-01040 SMG))].

On May 12, 2019, Appellee filed a motion seeking 1) to lift the automatic stay barring his state court action from proceeding and 2) to abate its adversary proceeding pending resolution of his state court claims ("Motion to Lift Stay and Abate Adversary Proceeding") [ECF No. 12-7 pp. 5–11]. The Bankruptcy Court then held a hearing on June 19, 2019 [ECF No. 13] and subsequently entered an Order denying without prejudice Appellee's Motion to Lift Stay and Abate Adversary Proceeding [ECF No. 12-7 p. 21].

On October 10, 2019, Appellee filed a renewed motion, again seeking to lift the automatic stay on his state court action and to abate the adversary proceeding ("Renewed Motion")

[ECF No. 12-8 pp. 27–32]. The Bankruptcy Court[1] held a hearing on October 22, 2019 [ECF No. 14]. During the hearing, the Bankruptcy Court determined that the dispute belonged in state court but noted that (1) the state court action was filed post-petition in violation of the automatic stay and (2) Appellee's motion for abstention of the adversary proceeding was untimely [ECF No. 14 pp. 8–10]. To address this procedural posture, on October 25, 2019, the Bankruptcy Court granted the Renewed Motion *nunc pro tunc* to November 16, 2018, thereby lifting the automatic stay on the state court action retroactively to the date the state court case was filed, and *sua sponte* abstained the adversary proceeding [ECF No. 23 pp. 10–11].

On November 4, 2019, Appellants filed a motion for reconsideration of the Bankruptcy Court's Order granting the Renewed Motion ("Motion for Reconsideration") [ECF No. 12-8 pp. 148–52]. The Bankruptcy Court held a hearing on the Motion for Reconsideration on December 18, 2019 [ECF No. 15]. Following the hearing, the Bankruptcy Court denied the Motion for Reconsideration [ECF No. 12-8 p. 153]. Appellants then filed this appeal [ECF No. 1].[2] Appellants also filed a related appeal bearing case number 20-60034-CIV (S.D. Fla.), which United States District Judge Bloom consolidated with this appeal due to overlapping issues [ECF No. 8].[3] Appellants subsequently moved to stay the state court action pending this appeal, which the Bankruptcy Court denied [ECF Nos. 15, 22]. This appeal is ripe for adjudication.

---

[1] On October 2, 2019, both the main Chapter 7 bankruptcy proceeding and the adversary proceeding were transferred from Judge Raymond B. Ray to Judge Scott M. Grossman [ECF No. 12-1 p. 12; ECF No. 12-2 p. 7].

[2] Appellants' Notice of Appeal states that Appellants appeal the Bankruptcy Court's Order Granting Motion for Relief from Stay Nunc Pro Tunc to November 7, 2018 [ECF No. 1 p. 3].

[3] Although the Notice of Appeal in the related case (20-60034-CIV) references the Bankruptcy Court's Order Denying Motion to Reconsider [ECF No. 1 p. 3 in 20-60034-CIV], Appellants' brief in this appeal does not address the Order Denying Motion to Reconsider, and Appellants have not briefed or taken steps to prosecute an appeal of that order. To the extent Appellants seek to appeal the Order Denying Motion to Reconsider, such relief is thus dismissed for failure to prosecute.

**LEGAL STANDARD**

District courts have appellate jurisdiction over the judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a). A bankruptcy court's factual findings may not be set aside unless they are clearly erroneous. *See Commodore Holdings, Inc. v. Exxon Mobil Corp.*, 331 F.3d 1257, 1259 (11th Cir. 2003). "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). A district court reviews a bankruptcy court's conclusions of law de novo. *See Commodore*, 331 F.3d at 1259; *In re Calvert*, 907 F.2d 1069, 1071 (11th Cir. 1990). "Under de novo review, this Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." *In re Brown*, No. 08-1517-Orl-18, 2008 WL 5050081, at *2 (M.D. Fla. Nov. 19, 2008) (citing *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001)). A district court may affirm a bankruptcy court order on "any ground supported by the record." *In re Gosman*, 382 B.R. 826, 839 n.3 (S.D. Fla. 2007) (citing *Bircoll v. Miami–Dade County*, 480 F.3d 1072, 1088 n.21 (11th Cir. 2007)) (internal citation omitted).

"A decision to lift the [automatic] stay is discretionary with the bankruptcy judge, and may be reversed only upon a showing of abuse of discretion." *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 814 F.2d

---

*See Lawrence v. Educ. Credit Mgt. Corp.*, 522 F. App'x 836, 839 (11th Cir. 2013). In any event, any appeal of that denial of reconsideration would fail because the reconsideration order entered by the Bankruptcy Court denied reconsideration of relief that is now affirmed in this Order.

844 (1st Cir. 1987); *In re Holtkamp*, 669 F.2d 505 (7th Cir. 1982)); *see also In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 52 (S.D.N.Y. 2003) ("Because the inquiry required to evaluate whether to lift a stay is 'very fact specific and involve[s] the weighing of numerous factors peculiar to the particular case,' such decision by a bankruptcy court is committed to its sound discretion and is reviewable only for abuse-of-discretion." (internal citations omitted and alteration added)). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Air Safety Int'l, L.C.*, 336 B.R. 843, 852 (S.D. Fla. 2005) (citing *In re Red Carpet Corp. of Panama Cty. Beach*, 902 F.2d 883, 890 (11th Cir. 1990)).

## DISCUSSION

Appellants raise four arguments on appeal. The first three concern the Bankruptcy Court's order lifting the automatic stay on the state court action, *see* 11 U.S.C. § 362(d)(1) [ECF No. 12- 7 p. 28], and the fourth challenges the Bankruptcy Court's *sua sponte* order abstaining the adversary proceeding pending resolution of the state court action [ADV. No. 19-01040-SMG (ECF No. 64)]. The Court addresses these arguments in turn.

**A. The Bankruptcy Court Did Not Err in Granting Relief from the Automatic Stay**

Appellants first challenge the Bankruptcy Court's decision, in its Order Granting Renewed Motion [ECF No. 1 pp. 3–4], to lift the automatic stay on the state court action. According to Appellants, that decision was in error because the Bankruptcy Court previously had denied such relief in what Appellants describe as a "final order" under the holding of *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) [ECF No. 23 p. 13]. In other words, as the argument goes, because the Bankruptcy Court initially denied stay relief in a "final order," it was thereafter precluded from granting such relief. Appellee responds that no such error occurred

because the Bankruptcy Court's first order denying stay relief "without prejudice" did not prevent it from ultimately lifting the stay on the state court case [ECF No. 25 p. 9; ECF No. 12-7 p. 21].

The Court agrees with Appellee that the Bankruptcy Court's denial of stay relief "without prejudice" did not in this case result in a "final, appealable order" precluding the Bankruptcy Court's subsequent decision to lift the stay.

In *Ritzen*, the Supreme Court held that a bankruptcy court's order on a motion for relief from the automatic stay in 11 U.S.C. § 326(a) is a "final, appealable order when the bankruptcy court *unreservedly* grants relief or denies relief." 140 S. Ct. at 586 (emphasis added). The Court elaborated more fully on its holding as follows:

> The precise issue the Court today decides: Does a creditor's motion for relief from the automatic stay initiate a distinct proceeding terminating in a final, appealable order when the bankruptcy court rules dispositively on the motion? In agreement with the courts below, our answer is "yes." We hold that the adjudication of a motion for relief from the automatic stay forms a discrete procedural unit within the embracive bankruptcy case. That unit yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief.

140 S. Ct. at 586; *id.* at 591 (characterizing as "final all orders *conclusively resolving* stay-relief motions" (emphasis added)).

The *Ritzen* Court then expressly declined to decide whether an order like the one at issue here—in which the Bankruptcy Court initially denied stay relief "without prejudice"—would likewise trigger a final order, observing that "further developments might change the stay calculus." 140 S. Ct. at 592 n.4 ("We do not decide whether finality would attach to an order denying stay relief if the bankruptcy court enters it "without prejudice" because further developments might change the stay calculus. *Nothing in the record before us suggests that this is such an order*." (emphasis added)).

6

The Bankruptcy Court's Order in this case initially denying stay relief "without prejudice" [ECF No. 12-7 p. 21] did not exceed or undermine the precepts of *Ritzen*. *Ritzen* concerned a stay adjudication that conclusively resolved the question of stay relief, finally disposing of that discrete issue. The "without prejudice" order at issue here did not have that effect. It is framed in express terms as a denial of stay relief "without prejudice," both in the written order itself and orally by the Bankruptcy Court during the hearing on the motion [ECF No. 12-7 p. 21; ECF No. 13 p. 7]; it says nothing that could be construed as an impediment to seeking or granting future stay relief; and none of the parties' filings following that initial order reflect an understanding of that initial order as the dispositive end to the question of stay relief in the litigation. Thus, the Bankruptcy Court's denial "without prejudice" of the initial motion for stay relief left Appellee free to file a renewed motion and did not prevent the Bankruptcy Court from later granting stay relief. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1094 n.7 (11th Cir. 1996) (holding that an order entered without prejudice was "non-final in nature," and stating that "'without prejudice' refers to the fact that the [order] is not on the merits"); *see also Without Prejudice*, *Black's Law Dictionary* (11th ed. 2019) ("In dismissing motions . . . 'without prejudice,' no right or remedy of the parties is affected. The use of the phrase simply shows that there has been no decision of the case upon the merits, and prevents defendant from setting up the defense of res adjudicata.").

Nor was the Bankruptcy Court's order granting stay relief improper because the Renewed Motion, as Appellants say, did not raise a new basis for relief [ECF No. 23 pp. 21–23]. Discovery in the state court case had advanced during the more than three-month time from when the Bankruptcy Court initially denied stay relief (in June of 2019) to the Renewed Motion (in October of 2019), with multiple notices of depositions and requests for documents and interrogatories—thereby indicating some developments in the litigation pertinent to the stay calculus and to matters

affecting judicial economy and party resources [ECF No. 12-8 p. 35].  During the hearing on the Renewed Motion, Appellee argued, in relevant part, that the burden of discovery outweighed any hardship to the debtor because of the need to do "complicated corporate financial discovery twice in two cases, and try two cases" [ECF No. 14 p. 5].  The Bankruptcy Court agreed, stating that "[j]udicial economy dictates that this be done in the state court. The action involves non-debtors, and that's the appropriate forum to liquidate the claim. . . . " [ECF No. 14 p. 5].  It is true that Appellee's Renewed Motion is substantially similar to its initial Motion to Lift Stay and Abate Adversary Proceeding [*compare* ECF No. 12-8 pp. 27–32 *with* ECF No. 12-7 pp. 5–11].  But that fact alone does not establish error or an abuse of discretion in the Bankruptcy Court's discretion ultimately to grant the Renewed Motion.

Appellants' final challenge to the Bankruptcy Court's stay decision is a claim that Appellees did not show "cause" under 11 U.S.C. § 362(d)(1) sufficient to warrant lifting the automatic stay.  Section 362 of the Bankruptcy Code provides that the bankruptcy court may grant relief from the automatic stay, "such as by terminating, annulling, modifying, or conditioning such stay," on "request of a party in interest . . . for cause, including the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. § 362(d)(1).  The Bankruptcy Code does not define the term "cause."  *See In re Feingold*, 730 F.3d 1268, 1276 (11th Cir. 2013) (citing *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) ("Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case.")).  "There is no set list of circumstances that a bankruptcy court is required to consider in evaluating whether § 362(d)(1) 'cause' exists to lift the automatic stay." *Feingold*, 730 F.3d at 1277.  "Rather, courts evaluating whether to grant stay relief have looked to a variety of case-specific factors, including (1) whether the debtor has acted in bad faith;

8

(2) the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code; and (3) pending state court proceedings." *Id.* (citations omitted).

Appellants argue that the Bankruptcy Court erred by ignoring the harm to Appellants that would follow having to relitigate issues in state court [ECF No. 23 p. 24]. Appellants further argue that the Bankruptcy Court erred by purportedly relying solely on the dischargability of the debt at issue in determining whether to grant stay relief [ECF No. 23 pp. 24–25]. *See Feingold*, 730 F.3d at 1277–78 (stating that "nondischargeability alone cannot supply the cause contemplated by § 362(d)(1)").

The record does not support Appellants' contention. Upon receipt of Appellee's Renewed Motion, Judge Grossman held a hearing in which he weighed several factors, including the prospective hardships on the parties and the underlying merits of the state court action—ultimately determining that the adversary proceeding first should be liquidated in state court [ECF No. 14 pp. 4–5, 8–10]. Furthermore, during Judge Grossman's subsequent hearings on Appellants' Motion for Reconsideration and motion for stay of state court proceedings pending appeal, Judge Grossman made clear that he had considered a variety of factors beyond dischargability, including judicial economy, the nature of the pending state court action, and potential harms to Appellants:

> Without question the movant, Mr. Panjwani, and his attorneys made some mistakes here. However that does not change my opinion that this dispute between Mr. Panjwani and the debtors belongs in state court. There are non-debtor parties involved in the state court lawsuit, a jury trial has been requested, and state law issues clearly predominate over bankruptcy issues.

[ECF No. 15 p. 21].

> As I previously stated, the underlying dispute belongs in state court. There are non-debtor parties involved in the state court lawsuit, a jury trial has been requested, and state law issues clearly predominate over bankruptcy issues. It was for those reasons that I found abstention and stay relief were the best way in which the Court

9

> could mitigate the wasting of judicial resources, and the time and money of the various parties. These same reasons dictate that the debtors are unable to demonstrate that they will suffer an irreparable injury if a stay or other injunctive relief is not granted. The debtors undoubtedly have the ability to defend themselves against entry of a default judgment in the state court lawsuit regardless of whether or not they chose to do so. I also find it compelling that the harm complained of, the possibility of liquidation of a claim against the debtors, would also have been the result if the adversary proceeding proceeded in this Court. I also find that the parties would be harmed if a stay of the order on appeal was granted.

[ECF No. 22 pp. 6:14–7:11].

Accordingly, the Bankruptcy Court did not merely weigh the issue of dischargability but rather applied the proper legal standard to the inquiry and considered a number of relevant factors, including the hardships on the parties and pending state court proceedings. "The decision to lift the automatic stay is within the bankruptcy court's discretion,[4] and the Court discerns no abuse of discretion in this evaluation.

Nor did the Bankruptcy Court abuse its discretion by granting stay relief retroactively. Appellants argue that the Bankruptcy Court, by entering its order to lift the automatic stay in the state court case *nunc pro tunc* to the date the state court action was filed, improperly "attempted to rewrite" the procedural history of the case [ECF No. 23 pp. 30–32]. Appellants cite to a recent Supreme Court case, *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, in which the Court, in an unrelated context, criticized "revisionist" use of *nunc pro tunc* orders. 140 S. Ct. 696, 701 (2020) ("[N]unc pro tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact. Put plainly, the court cannot make the record what it is not.") (internal citations and alterations omitted). In *Feliciano*, a case arising out of a

---

[4] *see In re Ware*, 562 F. App'x 850, 852 (11th Cir. 2014) (citing *Barclays–Am./Bus. Credit Inc. v. Radio WBHP, Inc.* (*In re Dixie Broad., Inc.*), 871 F.2d 1023, 1026 (11th Cir. 1989)); *see also In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984) (holding "that § 362(d) permits bankruptcy courts . . . to grant retroactive relief from the automatic stay").

dispute over Catholic school pension plans, the Supreme Court voided orders made by a Puerto Rico trial court—after the case had been removed to U.S. District Court but before the case was remanded back—because removal stripped the Puerto Rican court of jurisdiction. *Id.* at 700. In doing so, the Supreme Court found that the District Court's *nunc pro tunc* judgment, which purported to remand the case back to the Puerto Rican court as of an earlier date, was insufficient to retroactively confer jurisdiction. *Id.* at 701. That case is different from this case for the following foundational reason: the text of the Bankruptcy Code itself gives Bankruptcy Judges the power not only to "terminate" but also to "annul" the automatic stay, 11 U.S.C. § 362(d), and courts repeatedly have interpreted this provision as giving Bankruptcy Judges the power to grant stay relief retroactively, *see In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984) (holding "that § 362(d) permits bankruptcy courts . . . to grant retroactive relief from the automatic stay"); *see also In re Williford*, 294 F. App'x 518, 521 (11th Cir. 2008) ("An annulment operates retroactively to validate actions taken after the petition for bankruptcy was filed."). Accordingly, the Bankruptcy Court's Order Granting Stay Relief Nunc Pro Tunc to November 7, 2018 is affirmed.

### B. The Bankruptcy Court Did Not Abuse its Discretion by *Sua Sponte* Raising Permissive Abstention of the Adversary Proceeding

Finally, Appellants argue that the Bankruptcy Court abused its discretion in *sua sponte* abstaining from the adversary proceeding pending resolution of the state court action [ECF No. 23 pp. 26–32]. Appellants correctly acknowledge that no "set test" exists to determine when permissive abstention is warranted under 28 U.S.C. § 1334(c)(1), but they argue nonetheless that the Bankruptcy Court abused its discretion by failing to cite all of the factors relevant to abstention during the various hearings on this issue [ECF No. 23 pp. 26–32].

The Bankruptcy Code provides, in relevant part, that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). "Permissive abstention may be raised by the Court *sua sponte*." *In re Orlando Gateway Partners, LLC*, 555 B.R. 848, 853 (Bankr. M.D. Fla. 2016) (citing *Golf Club at Bridgewater, L.L.C. v. Whitney Bank*, 8:09-BK-10430-CED, 2013 WL 1193182, at *4 (M.D. Fla. Mar. 22, 2013) ("Permissive abstention under § 1334(c)(1) may be raised by the court *sua sponte*, and a court's decision to abstain is reviewed on appeal under a lenient abuse of discretion standard." (alterations and internal quotations omitted)).

Courts consider numerous factors in deciding whether to abstain from a proceeding, including:

> (1) the effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, (12) the presence in the proceeding of non-debtor parties, (13) comity, and (14) the possibility of prejudice to other parties in the action.

*Orlando Gateway Partners, LLC*, 555 B.R. at 853.

In this case, the Bankruptcy Court held multiple hearings on this issue in which attorneys for both sides were given opportunity to present their arguments [ECF Nos. 14 and 15]. During the hearing held on December 18, 2019, Judge Grossman explicitly referenced several of these factors in his decision to *sua sponte* abstain—citing judicial economy, prejudice to the parties, the

existence of a jury trial right, the presence of non-debtor parties, and the predominance of state law issues [ECF No. 15 p. 21 ("There are non-debtor parties involved in the state court lawsuit, a jury trial has been requested, and state law issues clearly predominate over bankruptcy issues.")]. The Bankruptcy Court has discretion over how to weigh these factors, and there is no indication in this record that the Bankruptcy Court relied on an erroneous legal standard or on any clearly erroneous fact. *See Southstar Capital Group, I, LLC v. 1662 Multifamily LLC*, 618CV1453ORL40DCI, 2019 WL 3752892, at *4 (M.D. Fla. Aug. 8, 2019) ("In [deciding whether to abstain], courts enjoy substantial 'discretion to determine the relative weight afforded each factor.'") (citing *In re Phoenix Diversified Inv. Cor.*, 439 B.R. 231, 246 (Bankr. S.D. Fla. 2010)). The Bankruptcy Court did not abuse its discretion in *sua sponte* abating the adversary proceeding pending the state court action.

## CONCLUSION

It is hereby **ORDERED AND ADJUDGED** that the Bankruptcy Court's Order Granting Stay Relief Nunc Pro Tunc to November 7, 2018 and (2) Order Abating Adversary Proceeding and Denying Motion to Dismiss and Motion to Strike Without Prejudice are **AFFIRMED**.

**DONE AND ORDERED** at Chambers in Fort Pierce, Florida this 19th day of October 2021.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record